2009 BNH 002

_____

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Bk. No. 05-15357-MWV |
| | Chapter 7 |
| Raymond Cox Jr. and | |
| Jocelyn G. Cox, | |
|     Debtors | |
| | |
| Diane Poliquin d/b/a | |
| Got Ink 4 U, | |
|     Plaintiff | |
| | |
| v. | Adv. No. 06-1045-MWV |
| | |
| Raymond Cox Jr. and | |
| Jocelyn G. Cox, | |
|     Defendants | |

*Arthur O. Gormley, III, Esq.*
GORMLEY & GORMLEY, PC
*Attorney for Plaintiff*

*Marc van Zanten, Esq.*
CRAIG, DEACHMAN & COWIE, PLLC
*Attorney for Defendants*

### MEMORANDUM OPINION

The Court has before it Raymond Cox Jr.'s and Jocelyn G. Cox's (the "Defendants") motion for summary judgment on all counts of Diane Poliquin's (the "Plaintiff") amended complaint objecting to the Debtors' discharge pursuant to 11 U.S.C. § 727(a)(2)(B) and (a)(4), and the Plaintiff's objection thereto.[1] On March 3, 2008, the Court held a hearing on the matter and took it under advisement.

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to the Bankruptcy Reform Act of 1978, as amended through October 16, 2005, 11 U.S.C. § 101 et seq.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND

The Defendants filed their chapter 7 petition on October 14, 2005. From 1992 through some time after the petition date but before November 21, 2005, the Defendants operated a business under the trade name ThinkStuff. Thinkstuff was in the business of selling computers and related accessories and providing repair services at its retail location in Hooksett, New Hampshire, and at trade shows throughout the New England area. The Defendants stopped operating ThinkStuff at the instruction of the United States Trustee and their counsel. On November 17, 2005, the section 341 meeting of creditors was held. On November 21, 2005, the Defendants formed and began operating a new business entity called ThinkFast Computer Services and Accessories, LLC (hereinafter "ThinkFast").

According to the Defendants' bankruptcy schedules, as of the petition date, the Defendants had: (1) $4,500 in inventory consisting of computer cables and accessories, (2) $1,534 in business equipment, and (3) $40 in cash on hand. The Defendants' petition did not originally list ThinkStuff and indicated that the nature of the their debt was consumer only. Their Statement of Financial Affairs, however, revealed ThinkStuff and its gross income for the years 2003 through 2005. On November 10, 2005, the Defendants amended their petition to include ThinkStuff and recharacterize their debt as consumer and business. They also amended their Statement of Financial Affairs to include additional responses related to their business.

On February 16, 2006, the Plaintiff commenced this adversary proceeding objecting to the Defendants' discharge. The Plaintiff holds a judgment in the amount of $48,293.78 against the

- 2 -

Defendants.  The Court entered an order dismissing the adversary proceeding on May 10, 2006, which was vacated and remanded on appeal.  On June 4, 2007, the Plaintiff amended her complaint, and the Defendants filed their answer.  On December 6, 2007, the Defendants moved for summary judgment, and the Plaintiff filed her objection.

## DISCUSSION

The complaint seeks an order denying the Defendants a chapter 7 discharge on two grounds pursuant to 11 U.S.C. § 727(a).  The Plaintiff argues that discharge should be denied under section 727(a)(4)(A) because the Defendants stated false oaths in their bankruptcy schedules by failing to list all ThinkStuff assets and undervaluing its inventory.  The Plaintiff also argues that discharge should be denied under section 727(a)(2)(B) on the grounds that the Defendants fraudulently transferred and removed property of the bankruptcy estate.  The Defendants move for summary judgment on both claims.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" when "the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." Rodriquez-Pinto v. Tirado-Delgado, 982 F.2d 34, 38 (1st Cir. 1993) (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)).  A fact is "material" when it has "the potential to affect the outcome of the suit under the applicable law."  Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).  Courts faced with a motion for summary judgment should read the record "in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodriquez, 23 F.3d 576, 581 (1st Cir. 1994).  "[W]hen facts, though undisputed, are capable of supporting conflicting yet plausible inferences - inferences that are capable of

leading a rational factfinder to different outcomes in a litigated matter depending on which of them the factfinder draws - then the choice between those inferences is not for the court on summary judgment." Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 764 (1st Cir. 1994).

In deciding this motion for summary judgment, the Court is guided by the longstanding principle that "[e]xceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's fresh start policy." In re Schifano, 378 F.3d at 66 (internal quotations omitted). The statutory right to a discharge is ordinarily "construed liberally in favor of the debtor[.]" Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997) (internal quotations omitted) (citing Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987)). However, the purpose of section 727(a) "is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs." Razzaboni v. Schifano (In re Schifano), 378 F.3d 60, 66 (1st Cir. 2004) (internal quotations omitted). The plaintiff has the burden of proving an objection to discharge. Fed. R. Bankr. P. 4005.

### A. Section 727(a)(4)(A)

Section 727(a)(4)(A) provides that discharge will be denied if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]" 11 U.S.C. § 727(a)(4)(A). To prevail under section 727(a)(4)(A), a plaintiff must show that "(1) the debtor knowingly and fraudulently made a false oath, and (2) the false oath related to a material fact in connection to the bankruptcy case." In re Schifano, 378 F.3d at 67. Matters are "material" if they are "pertinent to the discovery of assets, including the history of a bankrupt's financial transactions." In re Mascolo, 505 F.2d 274, 277 (1st Cir. 1974). "Because a debtor rarely gives direct evidence of fraudulent intent, we have recognized that, even on summary judgment, intent to defraud a creditor can be proved by circumstantial evidence." Marrama v. Citizens Bank of Massachusetts (In re Marrama), 445 F.3d 518, 522 (1st Cir. 2006); see In re Varrasso, 37 F.3d at 764. "A debtor's Schedules and Statement of Financial Affairs are unsworn declarations made under penalty of perjury and are, according to federal law, the

equivalent of a verification under oath." Smith v. Grondin (In re Grondin), 232 B.R. 274, 276 (B.A.P. 1st Cir. 1999).

The Defendants listed $4,500 as the value for ThinkStuff's inventory in their bankruptcy schedules. They move for summary judgment on the grounds that they produced evidence to show that the $4,500 value is accurate and that they are entitled to a judgment as a matter of law because the Plaintiff fails to produce evidence of fraudulent intent. In support, they submitted an inventory accounting dated October 13, 2005, that assesses the value of ThinkStuff's assets at $4,588. (Def.'s Ex. 3.) The Defendants also refer to Mr. Cox's deposition on October 11, 2007, during which he testified that the $4,500 was an accurate figure and that postpetition sales were derived from new inventory he purchased postpetition. (Def.'s Ex. 2 at 30-32, 43, 51-52.) The Defendants' representation of the inventory value in their schedules is "material" because it pertains to the discovery of the Defendants' assets. As such, the issue is whether the Plaintiff's evidence raises genuine issues concerning the Defendants' valuation and fraudulent intent.

The Court finds that there are genuine issues of fact for this claim to proceed to trial. First, the following evidence in the record raises a genuine issue of whether the valuation is false. ThinkStuff's 2005 tax return shows that it had $11,800 in inventory at the end of its business year, whereas the schedules list $4,500 worth of inventory. (Pl.'s Ex. N.) In addition, the Defendants conducted considerable postpetition business before ThinkFast was formed, which creates a reasonable inference of undervaluation. Specifically, the Defendants filed their petition on October 14, 2005, and continued to operate ThinkStuff until around November 17, 2005. Between October 26 and November 16, 2005, the Defendants sold products worth $24,405.93, when according to their schedules, they had $40 cash and $4,500 in inventory on the petition date. (Def's Motion for Summary Judgment ¶ 12.) Further, according to Walter Bacon's affidavit, from October of 2005 until early 2006, he witnessed Mr. Cox or his relative sell computer products that cost approximately $20,000 and had a retail value of approximately $30,000 at six trade shows per month. (Walter Bacon Aff. ¶¶ 7-8.)

Second, the record also raises a genuine issue of fact as to fraudulent intent. It is undisputed that the Defendants created ThinkFast days after they stopped operating ThinkStuff, that ThinkFast sold the same products as ThinkStuff, and that ThinkFast grossed $48,996 in November and December 2005, months immediately following the petition date. (See Pl.'s Ex. N.) A reasonable inference of fraudulent intent may be drawn from these facts and the facts supporting an inference of a false oath. Thus, there are triable issues on this claim.

B.     Section 727(a)(2)(B)

Section 727(a)(2)(B) provides:

(a) The court shall grant the debtor a discharge, unless–
　　. . .

>    (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–
>    　　. . .
>    
>    　　(B) property of the estate, after the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(B). For courts to deny discharge, the debtor must have (1) transferred (2) property of the estate (3) post-petition (4) with the intent to hinder, delay or defraud the Chapter 7 trustee or a creditor. Id. Further, courts must find actual intent, which may be inferred "from the facts and circumstances surrounding [the debtor's] actions." In re Marrama, 445 F.3d at 522.

The Defendants move for summary judgment on the grounds that the Plaintiff fails to and cannot provide evidence that they transferred and removed property of the estate or that they acted with the requisite intent. The Defendants allege that although they operated ThinkStuff postpetition, they stopped operations as soon as they were instructed to do so by their counsel, that all subsequent business was conducted through ThinkFast, and that none of ThinkStuff's assets were sold through ThinkFast or used by the same other than retail space on a *de minimus* basis. The facts cited below refer to postpetition

events, and thus, the issue is whether there are genuine issues of fact regarding whether the Defendants transferred property of the estate and if so, whether they acted with fraudulent intent.

The summary judgment record raises a genuine issue of whether the Defendants transferred or removed property of the estate. It is undisputed that the Defendants owned ThinkStuff's business, its bank accounts, and inventory on the petition date. Thus, the said assets became property of the estate. See § 541(a)(1) (providing that the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case"). It is also undisputed that the Defendants continued to operate ThinkStuff beyond the petition date. Although the Defendants allege that they segregated the assets acquired prepetition from those acquired and sold postpetition, Mr. Cox's deposition reveals that he transferred certain prepetition assets that he "understood to be exempt" to ThinkFast. (Def.'s Ex. 2 at 8.) In addition, according to their respective 2005 tax returns, ThinkStuff had $11,800 in inventory at the end of its business year in November 2005, and ThinkFast had $11,800 in inventory at the beginning of its business year, also in November 2005. (Pl.'s Ex. N.) According to Mr. Cox's deposition, he used postpetition funds that were deposited into ThinkStuff's operating account to acquire new merchandise for ThinkFast. (Def.'s Ex. 2 at 55-57.) Further, the Plaintiff produced cancelled checks drawn by ThinkStuff made payable to ThinkFast or cash that were deposited into ThinkFast's operating account in the amount of $6,465 in November and December 2005. (Pl.'s Ex. M.) Such evidence creates a reasonable inference that the Defendants transferred property of the estate postpetition to ThinkFast, or removed property of the estate postpetition by selling them through ThinkStuff and using the proceeds to purchase merchandise for ThinkFast.

Next, the following circumstantial evidence in the record raises a genuine issue of fact as to whether the Defendants acted with fraudulent intent. It is undisputed that the Defendants formed a new entity that was in the same line of business immediately after they stopped operating ThinkStuff, which grossed $48,996 in November and December 2005. (Pl.'s Ex. N.) In their interrogatories, the Defendants alleged that ThinkFast was capitalized from family resources not by the Defendants or ThinkStuff (Pl.'s

Ex. L), but the Plaintiff showed that ThinkStuff transferred $6,465 to ThinkFast in November and December 2005 (Pl.'s Ex. M), around the time of ThinkFast's formation. According to Mr. Cox's deposition, earnings from both ThinkStuff and ThinkFast were commingled in ThinkStuff's operating account in November 2005. (Def.'s Ex. 3 at 41.) The facts are unclear as to whether proceeds earned postpetition were derived from property of the estate or other inventory. These facts create a reasonable inference that the Defendants acted fraudulently, which raises a triable issue. Thus, there are triable issues concerning whether the Defendants fraudulently transferred property of the estate postpetition.

## CONCLUSION

For the reasons set out herein, the Court denies the Defendants' motion for summary judgment. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

DATED this 6th day of January, 2009, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge